Civil action. The issues were answered as follows:
"1. Are plaintiffs owners and entitled to possession of the lands described in the complaint? Answer: `Yes.'
"2. Did defendant Richmond Cedar Works wrongfully and unlawfully trespass upon same? Answer: `Yes.'
"3. What damage, if any, has plaintiff sustained? Answer: `One cent.'"
Judgment for plaintiffs; appeal by defendant.
The action was brought to recover damages for alleged trespass, but as the defendant admitted possession and the removal of timber, the controversy was practically confined to the first issue. The plaintiffs introduced a grant to Josiah Collins, dated 9 July, 1796, a deed from W. E. and H. L. Cohoon to F. N. Hussey, dated 28 November, 1883, and mesne
conveyances to the plaintiffs. Failing to exhibit a connected chain of title from the State, the plaintiffs undertook to establish their right to recover by showing adverse possession for seven years under known and visible lines and boundaries and under colorable title. The defendant contended that even if those under whom the plaintiffs claim had thus acquired title, it was divested by the defendant's subsequent adverse possession under color for the statutory period. The action was brought prior to 1 May, 1917. C. S., 426, 427, 428.
Several of the exceptions entered of record were abandoned on the argument; those brought forward and relied on have received our careful consideration, but some of them are so obviously untenable as to require no discussion.
Exception 2: T. B. Shallington, a surveyor, testified for the plaintiffs that the land described in the complaint lies within the boundaries of the Collins grant, and the defendant excepted on the ground that the question involved one of the vital matters on which the parties were at issue, and that the answer assumed to determine an essential element of the verdict. In the complaint the land is not described by course and distance, but by reference to natural objects; and, after testifying without objection that he knew the Collins grant and the boundaries of the *Page 189 
land in controversy, the witness said that the locus in quo is situated within the lines of the grant, or, in substance, that inside the grant are the natural objects called for as the boundaries of the locus in quo. This was evidence of a substantive fact, which, in view of the preceding evidence, was not incompetent on the ground that the witness invaded the province of the jury. This exception is without merit. Indeed, a witness for the defendant afterward testified to identically the same thing.
Exceptions 17, 18, 35, 36: The plaintiffs offered evidence tending to show that before bringing suit they built a camp on the land in controversy and put in charge of it a watchman named Sykes; that the defendant built another about fifty yards away, which was occupied by Bose Owens; and that on one occasion Abner Bryant acted as watchman in the absence of Sykes. The court permitted both Bryant and Sykes to testify that while they were serving in the capacity of watchmen for the plaintiffs, Bose Owens offered them $10 as a consideration for their surrendering possession of the land to him. To this evidence the defendant excepted on the ground that Owens was not authorized by the defendant to make such offer. It is well settled that the declarations of an agent which are made after the transaction, and are not a part of the res gestae, are incompetent, and that what an agent says within the scope of his agency, characterizing or qualifying his act, is admissible as a part of the res gestae. Branch v. R. R., 88 N.C. 575;Southerland v. R. R., 106 N.C. 104; Hamrick v. Tel. Co., 140 N.C. 151. Direct testimony of the agent's authority was not necessary. The evidence relating to this subject, considered in its entirety, and particularly with reference to the circumstances under which Owens subsequently took possession of the camp and the defendant's evident approval thereof, admits of the construction that Owens, at the time of the alleged conversations, was acting in furtherance of the defendant's purpose to evict the plaintiffs' watchmen, peaceably if possible, and forcibly if necessary; and being susceptible of this interpretation, the evidence was properly submitted to the jury.
Exceptions 44, 45, 46, 47: The defendant introduced the deposition of H. L. Cohoon, and excepted to the exclusion of certain portions thereof tending to show that F. N. Hussey, in 1883, had procured the execution of the Cohoon deed by fraud. The exceptions are based upon the two propositions: (1) that the Cohoons never had title to the land, and their possession was not colorable; and (2) that Hussey's fraud, in any event, vitiated the Cohoon deed as color of title.
In Tate v. Southard, 10 N.C. 121, Judge Henderson defined color of title as a "writing upon its face professing to pass title, but which does not do it, either from a want of title in the person making it or the *Page 190 
defective mode of conveyance that is used"; and his definition has been repeatedly accepted and approved. It is therefore utterly immaterial whether or not the Cohoons had title, for they executed and delivered to F. N. Hussey a deed which unquestionably constituted color in their grantee. Likewise, the second proposition must be resolved against the defendant. InSeals v. Seals, 165 N.C. 409, one of the questions was whether a deed procured by the grantee's fraud is color of title, and the Court held,Walker, J., writing the opinion, that the deed was valid until set aside for fraud; that it was merely voidable at the instance of the grantor; and that the intervention of a court of equity was required to declare it invalid. In the instant case, if the excluded evidence had been admitted and the jury had found as a fact that Hussey fraudulently induced the execution of the Cohoon deed, its quality as color of title would not thereby have been destroyed.
Exceptions 50, 51: The requested instructions, which are the subject of these exceptions, are defective in that they disregard the essential element of possession up to known and visible lines and boundaries under colorable title.
Exception 52: The court declined the prayer for instruction that keeping the land continuously and conspicuously posted for seven years was such adverse possession as would ripen the defendant's title, no one else being in the actual occupation. Admitting as a general proposition that the posting of land does not constitute sufficient adverse possession, the defendant contends that the locus is swamp land, uninhabitable, unfit for cultivation, and not susceptible of such actual possession as is usually available. It may be observed that the prayer contains no suggestion of the number of the notices or the places at which they were posted.
It is very generally held that the prevention of a trespass, whether by a written notice or by the employment of agents for the purpose, is not such actual possession as is necessary to mature title to real property. The act of posting land is not equivalent to the possessio pedis, and as against the owner is nothing more than notice of a claim. To hold that title to land may be defeated, when the owner has only constructive possession, by the claimant's posting of notices which may never come to the owner's knowledge, would amount to a ruling sanctioned neither by reason nor by established precedent. Lynde v. Williams, 68 Mo., 360; LumberCo. v. Hughes, 38 S. R. (Miss.), 769; Cedar Works v. Stringfellow, 236 Fed., 264.
Exceptions 34, 37, 48: These are exceptions to his Honor's denial of the defendant's motion to dismiss the action as in case of nonsuit. The ground of these exceptions, as stated in the defendant's brief, is the alleged invalidity of the deed from George A. Hussey to the plaintiff Z. V. Berry, and from Berry to his coplaintiff, S. A. Morris. In the *Page 191 
first of these deeds George A. Hussey and his wife are designated as parties of the first part, and Z. V. Berry as party of the second part. Following a recital of the consideration, without further mention of the names of the alleged grantors, are the words "and by these presents do bargain, sell, and convey, with general warranty unto the said Z. V. Berry and heirs and assigns." The habendum is "to the said G. A. Hussey, his heirs and assigns forever."
The deed was as signed by Hussey and his wife and duly probated and registered. Their names, it is true, are not in the granting clause, but they are in the premises; and it appears from the entire instrument that it was the intention of "the parties of the first part" to convey to the grantee the land described in their deed. 18 C. J., 172, sec. 54, and cases cited. We are also of opinion that the recital in the habendum is not a fatal defect. Certainly there must be a grantor, a grantee, and a thing granted, and when a person undertakes to convey his land there must be another to whom he may convey it, for he cannot convey it to himself.Dupree v. Dupree, 45 N.C. 166. The question presented here is adverted to in Hafner v. Irwin, 20 N.C. 570. There the grantee in the premises was Alfred Hafner, and in the habendum, M. W. Curry. Daniel, J., said: "Dwight, in the premises of the deed, bargained and sold the property to the plaintiff, his heirs, executors, etc. However, in the same deed thehabendum is to M. W. Curry, his heirs and assigns in trust, etc. All the parts of a deed which precede the habendum, taken together, are called the premises; of which it is said, the office is rightly to name the grantor and grantee, and to comprehend the certainty of the thing granted. But though the grantee should first be named in the habendum, the grant to him will yet be good, provided there was not another grantee named in the premises (Co. Lit., 26 b, note), or if there were, provided the estate given by the habendum to the new grantee was not immediate, but by way of remainder. The habendum part of a deed was originally used to determine the interest granted, or to lessen, enlarge, explain, or qualify the premises. But it cannot perform the office of divesting an estate already vested by the deed; for it is void if it be repugnant to the estate granted in the premises." 2 Bla. Com., 298; Goodtitle v. Gibbs, 5 Barn. Cress., 709; 4 Kent's Com., 468.
The application of these principles sustains also the validity of the deed from Berry to his coplaintiff. The habendum is substantially identical with that in the Hussey deed, and the only difference as to the parties is this: in the Berry deed the grantee is not named in the first clause of the deed as party of the second part, but is so designated in the granting clause. In this jurisdiction it is held that a deed of conveyances shall be considered in its entirety when the question of its legal sufficiency or of the intention of the parties is to be determined. The *Page 192 
principle is reiterated in Triplett v. Williams, 149 N.C. 396. ThereBrown, J., very pertinently said: "We concede all that is contended for as to the common-law rule of construction, and that it has been followed in this State. But this doctrine, which regarded the granting clause and thehabendum and tenendum as separate and independent portions of the same instrument, each with its especial function, is becoming obsolete in this country, and a more liberal and enlightened rule of construction obtains, which looks at the whole instrument without reference to formal divisions, in order to ascertain the intention of the parties, and does not permit antiquated technicalities to override the plainly expressed intention of the grantor, and does not regard as very material the part of the deed in which such intention is manifested." Blackwell v. Blackwell, 124 N.C. 270;Rowland v. Rowland, 93 N.C. 214.
Upon inspection of the record, we find
No error.